Milord A. Keshishian, Esq. (SBN 197835) (*Local Counsel*)
MILORD & ASSOCIATES, P.C.
10517 W Pico Blvd
Los Angeles, California 90064
Telephone: (310) 226-7878
Facsimile: (310) 226-7879
E-mail: milord@milordlaw.com

Andrew J. Campanelli, Esq. (*pending pro hac vice admission*)
CAMPANELLI & ASSOCIATES, P.C.
1757 Merrick Ave, Suite 204
Merrick, New York 11566
Telephone: (516) 746-1600
Facsimile: (516) 746-2611
E-mail: ajc@campanellipc.com

Attorneys for Plaintiff MICHAEL BENDER

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| MICHAEL BENDER,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF SANTA BARBARA, a government entity, CROWN CASTLE USA, INC., a foreign corporation,<br><br>    Defendants. | Case No.: 2:21-cv-6866<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND PENALTIES for:**<br><br>**1. 42 U.S.C. §§ 12131 *et seq.* [Title II of The Americans with Disabilities Act];**<br><br>**2. 42 U.S.C. §§ 3601 *et seq.* [Fair Housing Act];**<br><br>**3. Cal. Gov. Code §§ 12900 *et seq.* [Fair Employment and Housing Act];**<br><br>**DEMAND FOR JURY TRIAL** |

## **COMPLAINT**

Plaintiff Michael Bender ("Plaintiff") brings this action for declaratory and injunctive relief, punitive damages and civil penalties against the defendants County of Santa Barbara (the "County") and Crown Castle USA, Inc.[1] ("Crown Castle," and together with the County, "Defendants") under

---

[1] The Complaint does not assert any direct claims against Crown Castle. Crown Castle is named as a defendant insofar as it is a necessary party in this case because, upon information and belief, Crown Castle is in possession of a permit from the County, granting Crown Castle permission to begin construction of a 5G small cell near Plaintiff's premises.

Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131–12134, as well as implementing regulations 28 C.F.R. Part 35, challenging the County's refusal to grant Plaintiff's request for reasonable accommodation on the basis of his disability and engage in an interactive process. Plaintiff also asserts claims under the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended ("FHA") against the County for failure to make reasonable accommodations in rules, policies, practices when such accommodation may be necessary to afford a disabled person equal opportunity to use and enjoy his dwelling. Lastly, Plaintiff asserts a claim against the County under the California Fair Employment and Housing Act, Cal. Gov. Code § 12955(l) ("FEHA"), for discriminatory actions undertaken by the County of Santa Barbara Planning Development Department that make housing opportunities unavailable.

## INTRODUCTION

1.      Congress enacted the ADA and FHA to eradicate discrimination against individuals with disabilities in different areas of their lives. Congress, through the ADA and FHA, envisioned a broad civil rights mandate tailored to end the unnecessary exclusion of persons of disabilities, who have been historically relegated to the margin of our society without any possibility to demand equal treatment.

2.      For more than thirty years, the ADA has afforded the disabled in our society the same rights and opportunities as everyone else. Across the entire United States, when an individual reasonably believes that he is being discriminated on account of his disability, he can file a demand for reasonable accommodation with his local ADA coordinator/compliance officer and receive a written determination. When further information is necessary to grant an accommodation, the disabled person and the municipality engage in an interactive process to reach a mutual solution.

3.      Plaintiff has a history of Lyme Disease and Mast Cell Activation Disorder (MCAD). He is disabled within the meaning of the ADA and FHA. This disability drastically limits his exposure to wireless emissions. His personal physician has stated that EMF and RF exposure from a facility located within 100 feet from the Residence would be extremely detrimental to him on account of his Lyme Disease and MCAD disability. On March 31, 2021, after Plaintiff was informed that ExteNet

was prepared to install a small cell forty-five (45) feet from his residence, he submitted a demand for reasonable accommodation to the County requesting:

> the County halt Crown Castle from beginning construction of the Small Cell near the Residence until the County determines (1) whether Mr. Bender is entitled to a reasonable accommodation under the ADA and FHA and, if so, (2) what that reasonable accommodation should be. In making such determination, the County shall assess the effective radiated power and its impact on his Residence.

4.    Shockingly, the County has refused to consider Plaintiff's request for reasonable accommodation and to engage in an interactive process with him. True and correct copies of Plaintiff's Request for reasonable accommodation to the County and the County's Response are attached hereto respectively as *Exhibit "A"* and *Exhibit "B"* and incorporated by this reference.

5.    The County is seeking to circumvent its federally and state-mandated obligations under the notion that the County lacks authority to regulate personal wireless facilities on the basis of RF emissions under the Telecommunications Act of 1996 ("TCA") and related FCC's regulations, even when the person submitting the request is disabled and has protected rights under the ADA, FHA and FEHA.

6.    There is a fundamental misconception in the County's argument. The TCA was intended to complement, not supplant, other federal statutes, including the ADA and FHA. The TCA and related FCC's regulations do not limit the County's ability to grant requests for reasonable accommodation. When the County makes an accommodation, the County is not exercising its "local zoning authority" to place local impediments to national wireless services, thereby using its powers under the zoning code and/or California statutes to prevent the rapid deployment of wireless infrastructures; rather, the County is simply complying with preemptive federal laws, which mandates to accommodate individuals with disabilities.

7.    There is no indication that the TCA and related FCC's regulations were designed to carve out the rights of disabled individuals under the ADA and FHA. Congress never intended the TCA to be used as an instrument to prioritize personal wireless service facilities over the rights and lives of disabled individuals. A different conclusion would lead to all disabled individuals being politically powerless before their local governments in the context of wireless facilities, such that they would inevitably be forced to live in a constant state of pain, and likely vacate their own homes.

8.     Plaintiff's lawsuit challenges the County's deliberate indifference to the rights of Plaintiff, a severely disabled individual. This Court should declare the County's actions violative of both the ADA and FHA, and order the County to comply with its federally-mandated obligations—as well as its broader state-mandated obligations under the FEHA.

## PARTIES

9.     Plaintiff Michael Bender is an individual who resides at 354 Arroyo Rd, Santa Barbara, CA 93110 (the "Residence").

10.     Defendant County of Santa Barbara is a California government agency duly organized and operating in California.

11.     Defendant Crown Castle USA, Inc. is an active foreign corporation with an address and principal place of business at 2000 Corporate Dr., Canonsburg, PA 15317.

## JURISDICTION AND VENUE

12.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 42 U.S.C. §§ 12133 and 12134, and 28 U.S.C. §§ 2201 and 2202.

13.     The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because the claims arise from a common nucleus of operative fact and are so intertwined with other matters pending before the Court as to make exercise of supplemental jurisdiction appropriate.

14.     Venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that Santa Barbara County is the underlying County for purposes of venue and where the vast majority of the events occurred.

15.     **Intradistrict Assignment.** Assignment to the Western Division of this District is proper because the action arises in Santa Barbara County.

## FACTUAL BACKGROUND

**The Director of the Santa Barbara Planning and Development Department has exclusive control over the construction of small wireless communications facilities.**

16.     The County Code establishes a procedure that vests the Director of Planning and Development to review and approve small wireless facilities (*e.g.*, a 5G small cell) without the need

for a zoning permit. Any Development Plan submitted by a wireless company is reviewed administratively and approved by the Director at her discretion.

17.     Thus, every time a company seeks to construct and operate a new small wireless communications facility, it simply submits an application to obtain the approval of the Director without the opportunity for public comments.

18.     Under the process established by the County Code, the Director has routinely granted wireless carries and/or site developers permission to build small cells and other small wireless facilities without considering the rights of disabled individuals under the ADA and FHA.

19.     Specifically, in the context of small wireless facilities, the County has no policy, practice or procedure through which the County can (a) notify adversely affected third-parties of applications for small cells in close proximity to their homes, (b) notify adversely affected third-parties of any project permits issued to wireless carriers and/or site developers for the construction of small cells in close proximity to their homes, (c) consider an individual's disability before, during and/or after the issuance of the necessary project permits, (d) grant reasonable accommodations to disabled individuals before, during and/or after the issuance of the necessary project permits, and (e) mandate wireless carriers and/or site developers to provide reasonable accommodations to disabled individuals. In sum, the County does not consider the rights of disabled individuals at any point in time in connection with small wireless facilities being installed or operated in Santa Barbara.

20.     As logic would dictate, disabled people who cannot tolerate RF exposure are the ones paying the price for this administrative process set forth by the County, which promotes the irresponsible placement of these small cells at a shockingly high speed and without any constraints. Disabled individuals simply wake up one morning to find unregulated wireless facilities have been installed—without notice—in very close proximity to their homes. The increase in RF emissions, combined with the unreasonable proximity of these installations to their residential properties, negatively affects their health and ability to enjoy the use and occupancy of their homes.

21.     The County's conduct in refusing to consider the rights of disabled individuals in connection with wireless communications facilities operated in Santa Barbara County, and controlled

1    and regulated exclusively by the County, is consistent with and part of the standard procedure and

2    policy utilized by the County.

3

4    **Crown Castle is prepared to commence construction of a 5G small cell forty-five feet from the Residence that will be injurious to the Plaintiff.**

5    22.    Upon information and belief, Crown Castle has submitted a Development Plan to the

6    Director of the Planning and Development Department for the construction of one 5G small cell at

7    315 Arroyo Rd, Santa Barbara, CA 93110.

8    23.    Upon information and belief, Crown Castle received approval from the Director and

9    is now prepared to commence construction of its small cell, which will be located forty-five feet from

10   the Plaintiff's Residence.

11   24.    As set forth below, Crown Castle's proposed installation will cause significant injuries

12   to Plaintiff and deprive him of the opportunity to live safely within the confines of his home.

13   **The County's refusal to consider Plaintiff's disability.**

14   25.    According to Dr. Kelly K. McCann, a Doctor of Medicine licensed in the State of

15   California, Plaintiff is an individual who suffers from Lyme Disease and Mast Cell Activation

16   Disorder, and his impairments constitute a disability within the meaning of the ADA and FHA.

17   26.    In Dr. McCann's professional opinion, EMF and RF exposure from a facility located

18   within 100 feet from the Residence "*would be extremely detrimental to [Mr. Bender's] health and*

19   *recovery process and potentially make his current residence unhabitable for him and would*

20   *exacerbate his condition*" on account of his disability. The Plaintiff must limit his exposure to

21   radiation emitted by wireless facilities in order to reduce the likelihood of any aggravation of his brain

22   or nervous system. See Ex. A.

23   27.    When Crown Castle erects its proposed 5G small cell, Plaintiff will immediately

24   experience severe symptoms inside his Residence. His neurological system and overall well-being

25   will be severely impaired according to Dr. McCann.

26   28.    Faced with the spectrum of having to leave his Residence or aggravating his physical

27   and mental conditions, Plaintiff submitted a request for ADA accommodation to the County. See Ex.

28

A. In this correspondence, Plaintiff outlined his status as a qualified individual with a disability under the ADA and underscored the urgency of this matter.

29.     The County's website further states that "the County of Santa Barbara is committed to complying with the Americans with Disabilities Act (ADA) through its existing programs." The website provides an ADA Request for Accommodation Form that the Plaintiff filled out and attached to his demand for reasonable accommodation.

30.     The ADA Compliance Officer never made a determination on Plaintiff's demand for reasonable accommodation.

31.     Instead, the Director of Planning and Development, Ms. Lisa Plowman, who was carbon copied in that correspondence, summarily refused to consider Plaintiff's request for reasonable accommodation and to engage in an interactive process by claiming, *inter alia*, that:

> Under the Federal Telecommunications Act, the County does not have authority to regulate personal wireless facilities on the basis of radio frequency (RF) emissions, which result from Crown Castle's private activity, if those wireless facilities comply with applicable FCC limits. The County requires all telecommunications facilities that it permits to comply with the Maximum Permissible Exposure (MPE) Limits established by the FCC. (County Land Use and Development Code § 35.44.010.E.1.a.). See Ex. B.

32.     The County's position on this legal issue is devoid of any merit and reflects a clear departure from its federally and state-mandated obligations under the ADA, FHA and FEHA. The County should have taken affirmative actions to investigate the subject and, at minimum, should have commenced an interactive process, where the County could engage in meaningful discussions with Plaintiff and explore potential alternatives.

33.     Instead, the County refused to engage in an interactive process and is permitting Crown Castle to construct a 5G small cell, which will be injurious to Plaintiff.

34.     Crown Castle has equally been made aware of the severity of Plaintiff's disability, as well as his rights under federal and state law, but has chosen not to move its small cell.

35.     The County cannot utterly disregard Plaintiff's symptoms and the seriousness of his disability. The County has engaged in a pattern of practice of discrimination towards Plaintiff on the basis of his disability, in violation of Titles II of the ADA, the FHA and the FEHA.

36.     As a result of the foregoing, the County's refusal to make a final determination regarding Plaintiff's demand for reasonable accommodation and its failure to engage in a good-faith interactive process violated Title II of the ADA and its implementing regulations. The County is also liable for its failure to make reasonable accommodations in rules, policies, practices to afford Plaintiff an equal opportunity to use and enjoy his Residence under the FHA, and the Planning Development Department cannot take actions to make housing opportunities unavailable for disabled people under the FEHA.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE II
(Against the County)

37.     Plaintiff repeats, reiterates and incorporates by reference each of the foregoing allegations of the complaint.

38.     Plaintiff is a "qualified individual with a disability" within the meaning of the ADA, 42 U.S.C. §§ 12102 and 12131(2) and 28 C.F.R. § 35.104.

39.      The County is a "public entity" within the meaning of the ADA, 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104.

40.     As set forth above, the County refused to consider Plaintiff's right under the ADA, grant his request for reasonable accommodation, and engage in a meaningful, good-faith interactive process with him.

41.     As a result of the County's actions and/or inactions, Crown Castle can now install a 5G small cell forty-five (45) feet from Plaintiff's Residence. This facility will cause dramatic injuries to the Plaintiff and his ability to use and enjoy his home.

42.     The County showed a deliberate indifference to Plaintiff's rights under the ADA and its implementing regulation. The County's actions were the proximate cause of Plaintiff's injuries and its failure to reasonably accommodate Plaintiff—a severely disabled individual who cannot be exposed to electromagnetic and radio frequencies—in this context constitutes discrimination within the meaning of the statute.

43.     The County acted intentionally, willfully, and in plain disregard for the rights of others, including Plaintiff's rights.

44.     The County's actions described herein constitute a pattern or practice of discrimination towards disabled individuals, and their rights granted by the ADA and its implementing regulation.

45.     Therefore, for all the reasons discussed herein, Plaintiff is entitled to declaratory and injunctive relief, as well as reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12205, against the County.

## COUNT II
## VIOLATION OF THE FAIR HOUSING ACT
### (Against the County)

46.     Plaintiff repeats, reiterates and incorporates by reference each of the foregoing allegations of the complaint.

47.     Plaintiff is "handicapped" within the meaning of the FHA, 42 U.S.C. § 3602 (h)(1).

48.     Plaintiff's home is a "dwelling" within the meaning of 42 U.S.C. § 3602(b). The resident of this dwelling is a person with disabilities within the meaning of 42 U.S.C. § 3602(h).

49.     Congress intended the language of the FHA to apply to a broad range of circumstances, including avoiding "implementing land-use rules, ordinances, policies, or procedures that restrict or deny housing opportunities or otherwise make unavailable or deny dwellings to persons because of . . . handicap." 24 C.F.R. § 100.70(d)(5).

50.     As set forth above, the County refused to consider Plaintiff's right under the FHA, grant his request for reasonable accommodation, and engage in a meaningful, good-faith interactive process with him.

51.     As a result of the County's actions and/or inactions, Crown Castle can now install a 5G small cell forty-five (45) feet from Plaintiff's Residence. This facility will cause dramatic injuries to the Plaintiff and his ability to use and enjoy his home.

52.     The County's actions reflect a deliberate indifference to Plaintiff's rights under the FHA, were the proximate cause of Plaintiff's injuries and constitute a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be

1  necessary to afford Plaintiff equal opportunity to use and enjoy his dwelling, in violation of the FHA,
2  42 U.S.C. § 3604(f)(3)(B).

3      53.    The failure to reasonably accommodate Plaintiff—a severely disabled individual who
4  cannot be exposed to electromagnetic and radio frequencies—in the context of housing constitutes
5  discrimination within the meaning of the statute. Disabled individuals must be protected and provided
6  equal access to housing options.

7      54.    The County acted intentionally, willfully, and in plain disregard for the rights of others,
8  including Plaintiff's rights.

9      55.    The County's actions described herein constitute a pattern or practice of discrimination
10  towards disabled individuals and their rights granted by the FHA.

11      56.    Therefore, for all the reasons discussed herein, Plaintiff is entitled to punitive damages,
12  declaratory and injunctive relief, as well as reasonable attorneys' fees and costs pursuant to 42 U.S.C.
13  § 3613(c)(2), against the County.

14
**COUNT III**
**VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**
15
**(Against the County)**

16      57.    Plaintiff repeats, reiterates and incorporates by reference each of the foregoing
17  allegations of the complaint.

18      58.    Plaintiff is "disabled" within the meaning of the FEHA, Cal. Gov. Code § 12926.

19      59.    Plaintiff's home is a "dwelling" within the meaning of Cal. Gov. Code § 12955.1.1.

20      60.    While the FHA provides a floor of protection for individuals with disabilities in the
21  context of housing, California state's law has always, even prior to the passage of the FHA, afforded
22  additional and much broader protection—including in the context of RF exposure and related adverse
23  health effects on people with disabilities in light of a recent California decision in Brown v. Los
24  Angeles Unified School District, No. B294240 (Cal. Ct. of Appeals, February 18, 2021).

25      61.    As set forth above, the County refused to consider Plaintiff's right under the FHA,
26  grant his request for reasonable accommodation, and engage in a meaningful, good-faith interactive
27  process with him. The Planning Development Department's actions in refusing to even consider
28  Plaintiff's request rendered his Residence unavailable.

62.     As a result of the County's actions and/or inactions, Crown Castle can now install a 5G small cell forty-five (45) feet from Plaintiff's Residence. This facility will cause dramatic injuries to the Plaintiff and his ability to use and enjoy his home.

63.     The County's actions reflect a deliberate indifference to Plaintiff's rights under the FEHA, were the proximate cause of Plaintiff's injuries and constitute discrimination through public or private land use practices, decisions, and authorizations because of disability, in violation of Cal. Gov. Code § 12955(l).

64.     The failure to reasonably accommodate Plaintiff—a severely disabled individual who cannot be exposed to electromagnetic and radio frequencies—in the context of housing constitutes discrimination within the meaning of the statute. Disabled individuals must be protected and provided equal access to housing options.

65.     The County acted intentionally, willfully, and in plain disregard for the rights of others, including Plaintiff's rights.

66.     The County's actions described herein constitute a pattern or practice of discrimination towards disabled individuals and their rights granted by the FEHA.

67.     Therefore, for all the reasons discussed herein, Plaintiff is entitled to punitive damages, declaratory and injunctive relief, as well as reasonable attorneys' fees and costs under Cal. § 12989, against the County.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that the Court enter an ORDER:

A.     On the First and Second Causes of Action (ADA & FHA claims):

(i)     declaring that the County's actions violate Title II of the Americans with Disabilities Act and its implementing regulations 28 C.F.R. Part 35, and the Fair Housing Act Amendment of 1988;

(ii)     enjoining the County, its officers, employees, agents, successors and all other persons in active concert or participation with it, from discriminating against Plaintiff on the basis of his disability, in violation of the Americans with Disabilities Act and Fair Housing Act Amendments of 1988;

(iii)    enjoining Crown Castle, its officers, employees, agents, successors and all other persons in active concert or participation with it, from discriminating against Plaintiff on the basis of his disability, in violation of the Americans with Disabilities Act and Fair Housing Act Amendments of 1988;

(iv)    ordering the Defendants to take all affirmative steps to ensure compliance with the Americans with Disabilities Act, its implementing regulations, and Fair Housing Act Amendments of 1988, including any and all steps necessary to prevent the recurrence of any discriminatory conduct towards disabled persons, as mandated by 42 U.S.C. § 12101(b)(1), and to eliminate, to the extent practicable, the effects of their unlawful housing practices as described herein;

(v)    awarding punitive damages under 42 U.S.C. § 3613(c); and

(vi)    awarding attorneys' fees and costs under 42 U.S.C. § 12205 and 42 U.S.C. § 3613(c)(2), as well as assessing a civil penalty against the Defendants in an amount authorized by 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest.

B.    On the Third Cause of Action (FEHA claim):

(i)    declaring that the County's actions violate the California Fair Employment and Housing Act, Cal. Gov. Code § 12955;

(ii)    enjoining the County, its officers, employees, agents, successors and all other persons in active concert or participation with it, from discriminating against Plaintiff on the basis of his disability, in violation of the California Fair Employment and Housing Act;

(iii)    enjoining Crown Castle, its officers, employees, agents, successors and all other persons in active concert or participation with it, from discriminating against Plaintiff on the basis of his disability, in violation of the California Fair Employment and Housing Act;

(iv)    ordering the Defendants to take all affirmative steps to ensure compliance with the California Fair Employment and Housing Act, including any and all steps necessary to prevent the recurrence of any discriminatory conduct towards disabled persons, and to eliminate, to the extent practicable, the effects of their unlawful housing practices as described herein;

(v)    awarding punitive damages under Cal. Gov. Code § 12989; and

(vi)    awarding attorneys' fees and costs under Cal. Gov. Code § 12989.

1      C.     Awarding any additional relief as the interest of justice may require.

2                     **<u>DEMAND FOR JURY TRIAL</u>**

3      Plaintiff demands a trial by jury for all the issues a jury properly may decide and for all of the

4 requested relief that a jury may award.

5 Dated: August 11, 2021

                                   Respectfully submitted,

                                     **MILORD & ASSOCIATES, P.C.**

                                   By: <u>/s/ Milord A. Keshishian</u>
                                   Milord A. Keshishian (SBN 197835) (*Local Counsel*)
                                   10517 W Pico Blvd
                                   Los Angeles, CA 90064

                                   **CAMPANELLI & ASSOCIATES, P.C.**

                                   Andrew J. Campanelli (*pending pro hac vice*)
                                   1757 Merrick Ave, Suite 204
                                   Merrick, NY 11566

                                   *Attorneys for Plaintiff Michael Bender*

# EXHIBIT A

## CAMPANELLI & ASSOCIATES, P.C.
### ATTORNEYS AND COUNSELORS AT LAW

www.campanellipc.com

1757 Merrick Avenue · Suite 204 · Merrick, New York 11566
Telephone (516)746-1600
Facsimile  (516) 746-2611

Andrew J. Campanelli
*Member of NY & CT Bar*
_____
Kaitlin M. Kennedy
*Member of NY Bar*

Samuele Riva
*Member of NY Bar*

*COUNSEL*

George B. McPhillips
*1930-1994*

Via Email                                                                      March 31, 2021
County of Santa Barbara, Public Works Department
Attn: ADA Compliance Officer
123 East Anapamu Street
Santa Barbara, CA 93101
*pwroads@cosbpw.net*

**Re:     Request for ADA and FHA Accommodation regarding proposed 5G small cell wireless facility at 315 Arroyo Rd, Santa Barbara, CA 93110 in very close proximity to Mr. Bender's residence**

Dear ADA Compliance Officer:

Our law firm serves as legal counsel for Mr. Michael Bender ("**Mr. Bender**") with regard to a proposed 5G small cell wireless facility, case no. 21DVP-00000-00003 (the "**Small Cell**") that will be constructed at 315 Arroyo Rd, Santa Barbara, CA 93110 and operated by Crown Castle ("**Crown Castle**"). The Small Cell will be placed within 100 feet of Mr. Bender's residence at 354 Arroyo Rd, Santa Barbara, CA 93110 (the "**Residence**"). This letter serves to inform the County of Santa Barbara (the "**County**") of his status as a qualified individual with a disability, also known as person with a handicap,[1] and to request accommodation under the Americans with Disabilities Act of 1990 (the "**ADA**") and the Fair Housing Act Amendments of 1988 (the "**FHA**").

As the County is aware, Title II of the ADA, 42 U.S.C. §§ 12131–12134 ("**Title II**"), prohibits discrimination on the basis of disability by state and local governments. 28 C.F.R. § 35.101(a). Title II extends to every action by the County, including permitting. 28 C.F.R. § 35.102(a). The primary focus under Title II is whether a public entity has complied with its obligation to provide an accommodation when it is reasonable to do so, not whether the individual meets the definition of "disability." 28 C.F.R. § 35.101(b); 28 C.F.R. § 35.108(a)(2)(i).

The FHA, instead, requires the County to "make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Congress intended this language to apply to a broad range of circumstances, including avoiding "implementing land-use rules, ordinances, policies, or procedures that restrict or deny housing opportunities or otherwise make unavailable or deny dwellings to persons because of . . . handicap." 24 C.F.R. § 100.70(d)(5).

---

[1] The term "disability" instead of "handicap" is used in this correspondence as the terms have the same meaning. See Helen L. v. DiDario, 46 F.3d 325, 330 n.8 (3d Cir.1995) ("The change in nomenclature from 'handicap' to 'disability' reflects Congress' awareness that individuals with disabilities find the term 'handicapped' objectionable.")

County of Santa Barbara, Public Works Department
Attn: ADA Compliance Officer
March 31, 2021
Page 2 of 4

"While state and local governments have authority to protect safety and health, and to regulate use of land, that authority has sometimes been used to restrict the ability of individuals with handicaps to live in communities.... The Committee intends that prohibition against discrimination against those with handicaps apply to zoning decisions and practices." See H.R. Rep. No. 100-711, 100th Cong., 2nd Sess.—(1988) reprinted in U.S.C.C.A.N. 2173, 2184-2185. Specifically, "[a]s set out in § 3604(f)(3)(B), the failure to reasonably accommodate the disabled in the context of housing is, itself, a defined act of discrimination." Groome Resources Ltd., L.L.C. v. Parish of Jefferson, 234 F.3d 192, 202 (5th Cir. 2000).

Attached to this demand for reasonable accommodation is a letter from Dr. Kelly K. McCann dated February 15, 2021, which establishes that Mr. Bender has a history of Lyme Disease and Mast Cell Activation Disorder (MCAD), and his impairments constitute a disability within the meaning of the ADA and FHA. In her professional opinion, Mr. Bender's disability is so severe that it is necessary for him to limit any aggravation of his brain or nervous system, which includes, among other things, limiting exposure to electromagnetic and radio frequencies (generally referred to respectively as "**EMF**" and "**RF**"). RF exposure and related electromagnetic sensitivities are widely recognized as an impairing condition because they may harm an individual's neurological system and many major life activities. See 69 Fed. Reg. 44087 (July 23, 2004). As outlined in Dr. McCann's letter, that is precisely the case here where EMF and RF exposure from a facility located within 100 feet from the Residence "*would be extremely detrimental to [Mr. Bender's] health and recovery process and potentially make his current residence unhabitable for him and would exacerbate his condition*" on account of his disability. See Exhibit A.

As such, Title II and the FHA mandate the County to consider his disability when it reviews pending and/or approved applications for wireless facilities in the neighborhood of his Residence. In fact, the placement and operation of these facilities in close proximity to his Residence would effectively impair Mr. Bender's well-being, as well as his quiet use and enjoyment of his dwelling on account of his disability. A failure to consider and accommodate his status in reviewing applications for wireless facilities near his Residence would entail a failure to meet the County's obligations under Title II and the FHA. See 28 C.F.R. § 35.130(b)(7)(i); 24 C.F.R. § 100.204(a).

As we understand it, Crown Castle is prepared to commence construction—without any formal approval or permit from the County—of the Small Cell located within 100 feet of Mr. Bender's Residence, which will injure Mr. Bender and deprive him of the opportunity to live safely within the confines of his home. I am contacting the County at the earliest possible opportunity to request that the County halt Crown Castle from beginning construction of the Small Cell near the Residence until the County determines *(1) whether Mr. Bender is entitled to a reasonable accommodation under the ADA and FHA and, if so, (2) what that reasonable accommodation should be*. In making such determination, the County shall assess the effective radiated power and its impact on his Residence. Both requests will not create an undue financial or administrative burden on the County.

County of Santa Barbara, Public Works Department
Attn: ADA Compliance Officer
March 31, 2021
Page 3 of 4

Should the County require further information in order to grant this accommodation, the County shall engage in an interactive process with us pursuant to the ADA and FHA. Permitting Crown Castle to construct and operate the Small Cell (especially without any approval or permit), as well as approval of other wireless facilities near the Residence, prior to completion of the interactive process would be a violation of federal law. See, e.g., *Joint Statement of the Department of Housing and Urban Development and the Department of Justice: State, Local Land Use Laws and Practices and the Application of The Fair Housing Act 16* (2016). Accordingly, I again request that the County order (a) Crown Castle to suspend the construction of the Small Cell near the Residence and (b) any other wireless carrier and/or site developer to suspend construction of other pending and/or approved projects near the Residence, if any, to afford the County sufficient time to engage in an interactive process.

Please e-mail me at ajc@campanellipc.com or call me at (516) 746-1600 to schedule a meeting so we may further discuss the County's obligations under Title II and the FHA.

Yours, etc.

**CAMPANELLI & ASSOCIATES, P.C.**
*Attorneys for Michael Bender*

By: /s/Andrew J. Campanelli
       Andrew J. Campanelli, Esq.

Enclosures:    Exhibit A - Doctor Note

Cc:            Ms. Lisa Plowman
               Director of Planning & Development, County of Santa Barbara
               123 East Anapamu Street
               Santa Barbara, CA 93101-2000
               *lplowman@countyofsb.org*

               Mr. Michael C. Ghizzoni
               County Counsel, County of Santa Barbara
               105 East Anapamu Street
               Santa Barbara, CA 93101
               *adebruin@co.santa-barbara.ca.us*

               Mr. Gregg Hart
               Supervisor, 2nd District, County of Santa Barbara
               105 East Anapamu Street
               Santa Barbara, CA 93101
               *ghart@countyofsb.org*

County of Santa Barbara, Public Works Department
Attn: ADA Compliance Officer
March 31, 2021
Page 4 of 4

Crown Castle
222 East Carrillo Street, Suite 107
Santa Barbara, CA 93101
*via regular mail*

TITLE II of the Americans with Disabilities Act
Section 504 of the Rehabilitation Act of 1973

# Department of Public Works - Transportation Division
# Request for Accommodation Form

**Instructions:** Please fill out this form completely, using black ink or typing. Sign and send it to the address or email at the bottom of the page. This form is available in alternate formats by requests.

| Reporting Individual. | |
|---|---|
| Name and Address: | MICHAEL BENDER 354 ARROYO RD |
| City, State, Zip code: | SANTA BARBARA, CA 93110 |
| Telephone: | Home: ( 805 ) 679 - 5644     Business: |
| **Service, Program or Facility Alleged to Be Inaccessible.** | |
| Name of Service/Program or Facility: | SEE ADDENDUM |
| Address: | |
| City, State, Zip code | |
| Telephone number: | |
| Date: | |
| **Describe the way in which the service, program or facility is not accessible. (Please use other attachment as necessary).** | |
| SEE ADDENDUM | |
| **Action Taken (*for Office Use*).** | |
| | |
| Signature of Reporting Individual: | |

***Please mail to:*** **County of Santa Barbara, Public Works Department - Transportation**
**Attn: ADA Compliance Officer**
**123 East Anapamu Street, Santa Barbara, CA 93101**
**Or email:  pwroads@cosbpw.net**

For Office Use:
File No.      _____

Date Received _____      Received By:  _____



February 15, 2021

To: Lisa Plowman, Director of Planning & Development at County of Santa Barbara
RE: Crown Castle near 315 Arroyo Road (ATTSB27)

My name is Dr. Kelly McCann and I am the physician for Michael Bender who resides at 354 Arroyo Rd, Santa Barbara CA 93110, which sits within 100 feet of the proposed cell tower at 315 Arroyo Rd. Mr. Bender has been under my care for Lyme disease and Mast Cell Activation Disorder (MCAD)—which is a hyperresponsive state of the immune cells in the body. This disorder results in a dysregulation of the nervous system, as well, creating a challenging and painful experience for patients like Mr. Bender. Mast cells exist all throughout the body in nearly every tissue and as such, the symptoms of MCAD are highly variable from allergy type symptoms, to hives, gastrointestinal distress, cardiac and neurological problems. Some Mast Cell patients can't even take the medications necessary to heal until the nervous system and more specifically the limbic system of the brain is able to function properly. In patients like Mr. Bender one of the first areas of treatment is to limit any aggravation of his brain and nervous system. This can include limiting exposure to blue light and screens, loud noises, exposure to chemicals and cleaning products with detergents and perfumes and exposure to electromagnetic and radio frequencies (EMF & RF) from cell phones and smart devices.

Mr. Bender has experienced acute sensitivities to all of the above and for that reason I advised him to stop using all wireless devices which over stimulate his brain and nervous system. He has worked hard and spent considerable investment to remove wireless from his home, as well as reducing all forms of EMF to give his nervous system the best opportunity to recover. In my professional opinion, for a patient like Mr. Bender the proximity to a cell tower of any kind would be extremely detrimental to his health and recovery process and potentially make his current residence uninhabitable for him and would exacerbate his condition. I would respectfully ask the Board to please consider Mr. Bender's specific situation and find an alternative location that is not within the proximity of his residence. Thank you very much for your assistance in this critical health matter.

Sincerely,

Kelly K. McCann, M.D., MPH

**THE SPRING CENTER**
1831 Orange Ave., Suite C, Costa Mesa, Ca 92627
P 949 574-5800 F 949 612-2725

Kelly K McCann, MD, MPH & TM
Deanne E Newton, PA-C

www.thespringcenter.com
www.springbeautyllc.com
www.sjretreats.com

# EXHIBIT B

**sr@campanellipc.com**

| | |
|---|---|
| **From:** | Plowman, Lisa <lplowman@co.santa-barbara.ca.us> |
| **Sent:** | Monday, April 12, 2021 7:53 PM |
| **To:** | sr@campanellipc.com; PW Roads |
| **Cc:** | de Bruin, Adriana; Hart, Gregg; Pettit, Brian; Wilson, Jeffrey |
| **Subject:** | RE: Michael Bender - Demand for Reasonable Accommodation under ADA and FHA |

Dear Mr. Campanelli,

We received your letter of March 31 2021 concerning Crown Castle's pending application for a small wireless facility near 314 Arroyo Rd. in Santa Barbara, California (21DVP-0000-00003).

Under the Federal Telecommunications Act, the County does not have authority to regulate personal wireless facilities on the basis of radio frequency (RF) emissions, which result from Crown Castle's private activity, if those wireless facilities comply with applicable FCC limits.  The County requires all telecommunications facilities that it permits to comply with the Maximum Permissible Exposure (MPE) Limits established by the FCC. (County Land Use and Development Code § 35.44.010.E.1.a.)

Although you copied Crown Castle on your letter, we have separately reached out to Crown Castle to see if they would consider a different location of the proposed facility. To date, Crown Castle has been unwilling to propose an alternative location for this application, but has expressed a willingness to work with County residents to address these concerns.

Please let me know if you have any additional questions.

Best,
Lisa Plowman



**Lisa Plowman**
**Director**
Planning & Development
123 E. Anapamu St.
Santa Barbara, CA 93101
805-568-2086
lplowman@countyofsb.org
http://www.countyofsb.org/plndev/home.sbc

---

**From:** sr@campanellipc.com <sr@campanellipc.com>
**Sent:** Wednesday, March 31, 2021 10:55 AM
**To:** PW Roads <pwroads@cosbpw.net>
**Cc:** Plowman, Lisa <lplowman@co.santa-barbara.ca.us>; de Bruin, Adriana <adebruin@co.santa-barbara.ca.us>; Hart, Gregg <gHart@countyofsb.org>
**Subject:** Michael Bender - Demand for Reasonable Accommodation under ADA and FHA

**Caution:** This email originated from a source outside of the County of Santa Barbara. Do not click links or open attachments unless you verify the sender and know the content is safe.

Dear Sir or Madam:

Please see attached a correspondence from attorney Campanelli formally requesting a reasonable accommodation on behalf of our client, Mr. Michael Bender.

We cannot overemphasize the seriousness with which Mr. Bender views this matter, and our resolve to protect our client's rights and well-being by all available means.

Warm regards,

Samuele

**Samuele Riva, Esq.**
*Associate*
Campanelli & Associates, P.C.
1757 Merrick Avenue, Suite 204
Merrick, NY 11566
(516) 746-1600

**DISCUSSION PURPOSES ONLY**:
This e-mail, inclusive of any and all attachments, are strictly for discussion purposes only.  Unless and until all parties execute a written agreement, nothing contained herein or attached hereto shall be binding on any party.  All rights and remedies are expressly reserved.

**CONFIDENTIALITY**:
This e-mail, inclusive of any and all attachments, are legally privileged, confidential, and intended only for the intended addressed individual or entity.  If you believe you have received this e-mail by mistake or error, please immediately notify the sender, delete this e-mail, and destroy any physical forms thereof.  Thank you.